STATE ex rel. Chris KOSTER, Attorney General,[1] The Missouri Department of Natural Resources, and the Missouri Dam and Reservoir Safety Council, Appellant,

v.

Paul and Marilil OLIVE, Respondents.

No. SC 89752.

Supreme Court of Missouri, En Banc.

May 5, 2009.

---

1.  When this case was initially argued, Jeremiah W. (Jay) Nixon held the office of the attorney general. The case style has been changed to Chris Koster, who currently holds the office of attorney general. Rule 52.13(d).

Chris Koster, Atty. Gen., Don Willoh, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Jenifer M. Placzek, Matthew W. Placzek, Placzek & Francis, Springfield, MO, for Respondents.

WILLIAM RAY PRICE, JR., Judge.

Paul and Marilil Olive own property on which Rainbow Lake Dam is located. The state filed a petition against the Olives, alleging they were in violation of the Missouri dam and reservoir safety law because they failed to obtain a registration permit for the dam pursuant to section 236.440.3 [2] and a construction permit for any necessary alterations pursuant to section 236.435.[3] The Olives filed a motion for

---

**2.** All statutory references are to RSMo 2000 unless otherwise noted. Section 236.440.3 provides:

Owners of dams and reservoirs in existence on September 28, 1979, shall obtain registration permits for dams of fifty to seventy feet in height within four years, and for dams up to fifty feet in height within six years of September 28, 1979, or as otherwise required by the provisions of sections 236.400 to 236.500 and rules and regulations adopted hereunder. A registration permit shall be issued by the council upon the advice of the chief engineer for dams and reservoirs only after it is determined that the dam meets the standards of sections 236.400 to 236.500 and rules and regulations hereunder, and any recommendations made by the inspecting engineer pursuant thereto.

**3.** Section 236.435 provides:

1. Prior to the commencement of the construction, alteration, enlargement, reduction or removal of a dam or reservoir, the owner shall apply to the council and upon satisfying the requirements of sections 236.400 to 236.500 and the rules, regulations and standards promulgated pursuant hereto, obtain a construction permit.

2. The application for a construction permit shall bear the seal and signature of an experienced professional engineer registered in Missouri or employed by a qualified engineering division of a state or federal agency regularly engaged in dam construction for soil and water conservation, or irrigation or relating to wildlife conservation and shall be accompanied by the design report and plans and specification of the proposed design, alteration, enlargement, reduction, repair or removal of the dam or reservoir.

3. Any person constructing or owning a dam or reservoir, or living or owning property in an area affected, or whose safety may be affected by such dam or reservoir may consult with the chief engineer concerning such dam or reservoir.

4. The council upon hearing the recommendation of the chief engineer shall approve or deny an application for a construction permit within forty-five days after its receipt or the completion of any hearings in

summary judgment, arguing that the permitting requirements are unconstitutional as a retrospective law and further that the dam is exempt from the permitting requirements pursuant to section 236.436.7. The trial court granted summary judgment in favor of the Olives. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 3.

The judgment is reversed, and the case is remanded. The permitting requirements do not operate retrospectively because they apply to the current ability of the dam to hold back water safely and to the construction of any alterations to the dam required by the dam and reservoir safety law. The exemption in section 236.435.7 only would exempt the Olives from the initial construction permit requirements.

Because the Olives fail to show that they were entitled to judgment as a matter of law on either affirmative defense, summary judgment was inappropriate in this case.

## I. Facts

Rainbow Lake Dam, located in Greene County, was constructed in 1974 and is 40 feet high and 500 feet long. In 1979, the Missouri dam and reservoir safety law, sections 236.400 to 236.500, became effective.

In September 1995, the Olives purchased the land on which Rainbow Lake Dam is located. In September 1997, the department of natural resources provided the Olives written material regarding the operation of the dam, including a copy of the safety law and regulations and a registration permit application. In August 2000, the Olives filed for an agricultural exemption for their dam pursuant to section 236.435.6. In December 2000, the department issued a staff notice of violation and the need to obtain a registration permit. In June 2001, the Olives filed again for an agricultural exemption for their dam. Neither of the Olives' requests for exemptions was granted. In April 2001, the Missouri dam and reservoir safety council issued a council notice of violation

connection with such application, whichever is later. The permit shall be issued upon the receipt of the application if, in the judgment of the council, requirements of sections 236.400 to 236.500 and all standards, rules and regulations hereunder are satisfied and the design will be adequate to protect the public safety, life and property. 5. The council upon hearing the recommendation of the chief engineer may reject the application if it decides that there is insufficient information to determine the safety of the proposed construction, alteration, enlargement, reduction or removal of the dam or reservoir or that the construction, alteration, enlargement, reduction or removal of the dam or reservoir would endanger public safety, life or property, or otherwise not comply with sections 236.400 to 236.500 and any rules, standards, guidelines and regulations adopted hereunder. 6. A landowner who now owns or proposes to construct an agricultural dam or reservoir which will be used primarily for agri-

cultural purposes will be exempt from all provisions of sections 236.400 to 236.500. If the council with the advice of the chief engineer, determines that the dam or reservoir is no longer used primarily for agricultural services, it shall become subject to the provisions of sections 236.400 to 236.500. 7. Dams or their construction, alterations, enlargements, reductions or removals designed by, and their construction, alteration, enlargement, reduction or repair or removal monitored by, a qualified engineer regularly engaged in dam construction for soil and water conservation or irrigation or relating to wildlife conservation are for the purposes of such construction or other listed actions exempt from the provisions of this section except that the plans for the dam shall be filed with the chief engineer prior to construction, or other listed action. Amended plans shall be filed at the completion of construction or other listed action if there have been significant deviations from the previously filed plans.

advising that the Olives were in violation of the dam and reservoir safety law and must apply for and obtain a registration permit.

In November 2001, the state filed a petition for injunctive relief and civil penalties against the Olives. The petition alleged that the Olives have violated and continue to violate the dam and reservoir safety law by failing to obtain a registration permit in violation of section 236.440.3 and a construction permit in violation of section 236.435. The petition further alleges that, at all times, the dam has failed to meet the registration permit requirements because of the insufficient design and capacity of the emergency spillway.

The state requested an order compelling the Olives to submit to the dam and reservoir safety program a complete and acceptable construction permit detailing "construction, repairs, monitoring, and improvements to eliminate all observable defects of the dam;" to complete these improvements; and to conduct an as-built survey of the dam. The state also sought an order compelling the Olives to submit a complete and acceptable registration permit application. Lastly, the state sought a civil penalty of $1,000 per day per violation as authorized by section 236.495.2.

The Olives filed a motion for summary judgment, alleging that they were entitled to summary judgment as a matter of law based on two affirmative defenses. First, they argued that the permitting requirements are unconstitutional as a law retrospective in operation for dams built before the act's effective date. Second, they argued that the Rainbow Lake Dam was exempt from the construction and permitting requirements pursuant to section 236.435.7. In support of this argument, they attached an affidavit of the property's previous owner, William White, which included four exhibits. In the affidavit,

White verified these exhibits as sketches of the proposed dam prepared by the United States Department of Agriculture, a soil and water conservation plan for the dam, a geologist's report regarding the investigation of the dam site, and an earthwork computation sheet computed by the USDA.

The state filed a motion in opposition to the Olives' motion for summary judgment. The state also filed a motion to strike the affidavit and attached exhibits, arguing that the affidavit and exhibits were inadmissible evidence. The trial court overruled the latter motion and granted summary judgment in favor of the Olives. The trial court made no findings of fact or conclusions of law.

## II. Analysis

### a. Standard of Review

The standard of review of appeals from summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment shall be entered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

### b. Constitutional Validity of Permitting Requirements

#### (i)

Sections 236.400 to 236.500 were enacted as part of the "Dam and Reservoir Safety Act." The act establishes the dam and reservoir safety council to promulgate rules, regulations and standards for the safe operation, construction and maintenance of dams or reservoirs. Section 236.405. To ensure compliance with these

safety rules and regulations, the act requires owners of property with a dam or reservoir to follow certain permitting requirements administered by the council. The act provides for three different types of permits: construction permits, safety permits and registration permits. A construction permit is required "prior to the commencement of the construction, alteration, enlargement, reduction or removal of a dam or reservoir." Section 236.435.1. After the construction is complete, the owner then must apply for and obtain a safety permit. Section 236.440.1, 2. Owners of dams in existence when the act took effect are required to obtain a registration permit pursuant to section 236.440.3. Section 236.440.3 provides:

> Owners of dams and reservoirs in existence on September 28, 1979, shall obtain registration permits for dams of fifty to seventy feet in height within four years, and for dams up to fifty feet in height within six years of September 28, 1979, or as otherwise required by the provisions of sections 236.400 to 236.500 and rules and regulations adopted hereunder. A registration permit shall be issued by the council upon the advice of the chief engineer for dams and reservoirs only after it is determined that the dam meets the standards of sections 236.400 to 236.500 and rules and regulations hereunder, and any recommendations made by the inspecting engineer pursuant thereto.

(ii)

■ All citizens hold their property subject to a reasonable exercise of police power. *City of St. Louis v. Brune*, 515 S.W.2d 471, 474 (Mo. banc 1974); *Bellerive Inv. Co. v. Kansas City*, 321 Mo. 969, 13 S.W.2d 628, 634 (1929). The function of police power has been held to promote the health, welfare and safety of the people by regulating all threats harmful to the public

interest, and the legislature is afforded wide discretion to exercise this power. *See Craig v. City of Macon*, 543 S.W.2d 772, 774 (Mo. banc 1976); *Brune*, 515 S.W.2d at 474. Statutes enacted under the police power for the protection of public health or safety are valid so long as they bear a reasonable and substantial relationship to the public health, welfare or safety. *Brune*, 515 S.W.2d at 474; *Bellerive*, 13 S.W.2d at 634; *Poole & Creber Market Co. v. Breshears*, 343 Mo. 1133, 125 S.W.2d 23, 27 (1938). Property owners may lawfully be required to alter or reconstruct existing buildings without compensation when such alteration or reconstruction is reasonably necessary to ensure the public safety or to protect the public health. *See Kalbfell v. City of St. Louis*, 357 Mo. 986, 211 S.W.2d 911, 916–17 (1948) (upholding an order condemning an existing movie theater for noncompliance with the city's safety requirements enacted after the theater was built); *City of St. Louis v. Nash*, 260 S.W. 985, 986 (Mo.1924) (upholding ordinance requiring owners of existing buildings to install water closets for the protection of public health); *City of St. Louis v. Warren Comm'n & Inv. Co.*, 226 Mo. 148, 126 S.W. 166, 167–68 (1910) (upholding ordinance requiring the installation of fire doors and shutters to all four-story buildings occupied for manufacturing or mercantile purposes regardless of the date of construction); *Temple Bldg. v. Building Code Bd. of Appeals of the City of Kansas City*, 567 S.W.2d 406, 408–9 (Mo.App.1978) (upholding ordinance requiring owners of an existing building to modify the elevator system to provide interlocks for the protection of public safety).

(iii)

■ The requirement that owners of dams or reservoirs comply with the permitting requirements is a legitimate exer-

cise of police power. The construction, operation and management of dams and reservoirs have important consequences for public safety. Failure of dams and reservoirs can result in the loss of life, economic disaster, and extensive environmental and property damage. The permitting requirements, which require property owners to comply with the safety rules and regulations, are intended to prevent such disaster and to protect the public interest. Further, all dams in operation, including those in existence when the act took effect, are legitimate public safety concerns.

The Olives do not challenge the reasonableness of the exercise of police power in this case but argue that the permitting requirements are invalid as a law retrospective in application because it requires owners of existing dams to comply with safety standards that did not exist when the dams were constructed. Further, they argue that the duty to obtain a registration permit based on the prior construction of the dam is analogous to the operation of the registration requirements declared invalid in *Doe v. Phillips,* 194 S.W.3d 833 (Mo. banc 2006).

Article I, section 13 of the Missouri Constitution provides that "no law . . . retrospective in its operation . . . can be enacted." A law is retrospective in operation if it takes away or impairs a vested or substantial right. *See Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 496 (Mo. banc 1995). A vested right "must be something more than a mere expectation based upon an anticipated consequence of the existing law." *Id.* "Neither persons nor entities have a vested right in a general rule of law or legislative policy that would entitle either to insist that a law remain unchanged." *Id.*

A law is also retrospective if it imposes a new obligation, duty or disability

with respect to transactions or considerations already past. *See Squaw Creek Drainage Dist. v. Turney,* 235 Mo. 80, 138 S.W. 12, 16 (1911). In *Phillips,* the Court declared the registration requirements for sex offenders invalid because it imposed a duty on certain offenders to register based solely on their convictions that occurred prior to the enactment of the requirements. 194 S.W.3d at 852–53.

The permitting requirements, as applied to owners of dams in existence when the act took effect, do not operate retrospectively. The past construction of the dam is not the issue. The dam's present use and its present ability to hold back substantial amounts of water is the issue. The duty imposed to obtain a registration permit is based on the current existence, operation and safety of the dam and is distinguishable from the application of the registration requirements in *Phillips* to a single past criminal act. The Olives are not entitled to judgment as a matter of law on the basis of count one.

### c. Section 236.435.7 Exemption

The Olives also allege they are entitled to judgment as a matter of law because Rainbow Lake Dam is exempt from all permitting requirements pursuant to section 236.435.7 as a soil and water conservation dam. The state argues that section 236.435.7 only exempts soil and water conservation dams from the requirement to obtain a construction permit and not from the requirement to obtain permits required by other sections.

The primary rule of statutory construction is to "ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *St. Louis Police Officers' Ass'n v. Bd. of Police Comm'rs of the City of St.*

*Louis,* 259 S.W.3d 526, 528 (Mo. banc 2008).

 Section 236.435.7 provides:

Dams or their construction, alterations, enlargements, reductions or removals designed by, and their construction, alteration, enlargement, reduction or repair or removal monitored by, a qualified engineer regularly engaged in dam construction for soil and water conservation or irrigation or relating to wildlife conservation are for the purposes of *such construction or other listed actions* exempt from the provisions of *this section* except that the plans for the dam shall be filed with the chief engineer prior to construction, or other listed action. Amended plans shall be filed at the completion of construction or other listed action if there have been significant deviations from the previously filed plans. (Emphasis added).

The plain language of 236.435.7 states that dams meeting the criteria of a soil and water conservation dam are "for the purposes of such construction or other listed actions exempt from the provisions of this section." This limits the applicability of this exemption in two ways. First, the reference to "this section" indicates intent to apply this exemption only to the construction permitting requirements in section 236.435. As a result, the exemption would have no effect on the requirements to obtain a registration or safety permit pursuant to section 236.440, which provides no similar exemption. Second, section 236.435.7 only applies to "such construction or other listed actions," meaning that each time the owner intends to perform construction or any other listed action, the requirements of this section must be met for the exemption to apply. The exemption, if met, does not exempt the dam from the requirement to obtain a construction permit for all future construction.

Section 236.435.7 does not exempt the Olives from the requirement to obtain a registration permit pursuant to section 236.440. Neither does section 236.435.7 exempt the Olives from the present requirement to obtain a construction permit to make the necessary changes to bring the dam into compliance with the act and eligible for a registration permit. The Olives' argument and attached affidavit and exhibits only prove exemption from the permitting requirements for the initial construction of the dam, which is irrelevant to the present permitting requirements.[4] The Olives are not entitled to judgment as a matter of law on the basis of count two.

### III. Conclusion

The Olives fail to show that they were entitled to judgment as a matter of law on either ground argued in their motion. Summary judgment was inappropriate in this case, and the trial court erred in granting summary judgment in favor of the Olives. The judgment is reversed, and the case is remanded.[5]

All concur.

---

4. Because the Court finds that the attached affidavits and exhibits are irrelevant to the determination of whether the dam meets the exemption in section 236.435.7 for the present construction permit requirement, this decision moots any issue regarding the admissibility of this evidence.

5. The Court only addresses the arguments presented in the summary judgment motion,

specifically that the permitting requirements did not apply to the Olives because they were retrospective in operation and that the dam qualified for an exemption pursuant to section 236.435.7. This does not preclude the Olives from making additional arguments regarding the application of the permitting requirements before or at trial.