# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2755

_____

Laclede Gas Company

*Appellee*

v.

St. Charles County, Missouri

*Appellant*

_____

Appeal from the United States District Court
for the Eastern District of Missouri

_____

Submitted: January 17, 2013
Filed: April 25, 2013
[Published]

_____

Before BYE and MELLOY, Circuit Judges, and KOPF,[1] District Judge.

_____

KOPF, District Judge.

This dispute involves the rights of a local government, St. Charles County, Missouri ("County"), and the rights of a public utility, Laclede Gas Company

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

("Laclede"), in shared easements. The County takes the position that Laclede must alter or relocate its gas lines without compensation if the County so demands. Laclede disagrees and, so far, has been successful in the state courts. Despite this success, the County, according to Laclede, persists in its efforts to interfere with Laclede's gas lines. Among other things, Laclede claims that the County's threatened actions endanger the public safety.

This appeal stems from the district court's[2] grant of Laclede's motion for preliminary injunction. Because we conclude the district court had jurisdiction to grant the injunction, and did not abuse its discretion in doing so, we affirm.

## I. BACKGROUND

Laclede is a publicly regulated utility company that provides natural gas service throughout the St. Louis, Missouri, area. Using non-exclusive easements that it shares with the County, Laclede maintains gas lines along Pitman Hill Road ("PHR") and Ehlmann Road ("ER"). In 2007, the County was planning projects along PHR and ER and asked Laclede to relocate its gas lines to accommodate the projects. Laclede responded that it was willing to do so if the County agreed to reimburse Laclede for the costs associated with relocating the lines.

In 2008, the County filed an action in state court seeking a declaratory judgment that it had no obligation to pay Laclede's relocation costs along PHR. However, on August 30, 2011, the Missouri Supreme Court held that Laclede could not be compelled to relocate its lines without reimbursement from the County. *St. Charles Cnty. v. Laclede Gas Co.*, 356 S.W.3d 137, 139-40 (Mo. 2011).

---

[2]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

On October 11, 2011, Laclede filed this case against the County and L.F. Krupp Construction, Inc. ("L.F. Krupp"). L.F. Krupp was the County's contractor on the road projects. In the complaint, Laclede alleged three claims against the County: a § 1983 claim, a nuisance claim, and a claim seeking declaratory judgment that the County's attempted enforcement of Mo. Rev. Stat. § 229.360 would be unconstitutional. Laclede also alleged a negligence claim against L.F. Krupp. In response, the County and L.F. Krupp both filed motions to dismiss for lack of subject matter jurisdiction. On December 6, 2011, Laclede filed a motion for preliminary injunction. That same day, the County filed a motion to stay any proceedings on the motion for preliminary injunction while the motions to dismiss for lack of subject matter jurisdiction were still pending.

On January 18, 2012, the County moved to supplement to its memorandum in support of its motion to dismiss. The supplement was a petition filed against Laclede in the 11th Judicial Circuit Court, in St. Charles County, Missouri ("ER Proceeding"). In the ER Proceeding, the County sought to compel Laclede to alter its facilities on ER that were in conflict with ongoing County projects.

On February 6, 2012, Laclede filed a motion for leave to file an amended complaint, seeking to add a claim against the County based on the Natural Gas Pipeline Safety Act ("PSA"), 49 U.S.C. §§ 60101-60137. Laclede attached a copy of the proposed amended complaint to the motion. On March 7, 2012, the district court granted Laclede's motion to amend and the amended complaint was filed on that date.[3] Over the next two days, the district court held a preliminary injunction hearing. At the hearing, the court discussed the status of the case with the parties and the County informed the district court that it did not believe the amended complaint fixed the

---

[3]Laclede was required to obtain leave of the court to file an amended complaint under Federal Rule of Civil Procedure 15(a)(2) because the time for filing an amendment as a matter of course had run under Federal Rule of Civil Procedure 15(a)(1).

jurisdictional issues. The County subsequently moved to dismiss the amended complaint for lack of jurisdiction and for failure to state a claim.

On July 2, 2012, the district court entered an order granting, in part, Laclede's motion for preliminary injunction. The order enjoins the County from (1) constructing any additional portion of retaining wall on top of gas lines on the Pitman easement; (2) removing, or hiring another entity—aside from Laclede—to remove any portion of the PHR gas lines located on the Pitman easement; and (3) removing any portion of the gas lines from the Ehlmann Road easement. The order also directs the County to convey a substitute easement to Laclede to allow access to the gas main under Retaining Wall #3 on the Pitman Hill tract. In a footnote, the court acknowledged that the County's motion to dismiss for lack of jurisdiction was still pending and stated that a subsequent ruling on the motion would issue in the near future.

On appeal, the County argues that the district court erred in issuing the preliminary injunction without addressing the County's motion to dismiss and, further, that the district court lacked subject matter jurisdiction. The County also argues the district court erred in issuing the preliminary injunction because erroneous conclusions of law and fact tainted its analysis under the factors set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

At oral argument, the County conceded that a 11th Judicial Circuit Court, in St. Charles County, Missouri, had recently ruled in favor of Laclede in the ER Proceeding. That decision was rendered during the first week of January 2013. As a defendant, Laclede obtained no injunctive relief as a result of that ruling, and save for the federal injunction, there is no ruling explicitly prohibiting the County from interfering with the gas lines that are the subject of this action.

## II. DISCUSSION

We have reviewed the multitude of arguments advanced by the County for reversal of the preliminary injunction order. We are not persuaded by any of them. That said, there are two primary arguments that warrant further discussion.

### A. Jurisdiction

Initially, the County asserts that the district court erred, and automatic reversal is required, because the district did not rule on the County's motion to dismiss on jurisdictional grounds. The County would have us adopt a categorical rule that when dealing with a preliminary injunction motion (and, presumably, a motion for a temporary restraining order) district courts must always rule upon an opposing party's assertion that the court lacks jurisdiction. There is no precedent for such a proposition in this Circuit, although the Fifth Circuit may have adopted such a rule. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 & n.22 (5th Cir. 1985) (concluding the district court erred in granting a preliminary injunction while deferring decision on the defendant's assertion that the court lacked subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act). We decline to adopt the categorical imperative urged by the County. While we agree that it is preferable to resolve assertions of lack of jurisdiction when ruling upon a motion for a preliminary injunction or a motion for a temporary restraining order, the district court's failure to do so, by itself, does not require reversal.

We turn then to the County's primary argument, that is, that the district court lacked subject matter jurisdiction to enter the preliminary injunction order. We review questions of subject matter jurisdiction de novo. *Cmty. Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 980 (8th Cir. 2011).

As discussed above, Laclede amended its complaint on March 7, 2012, to add a claim against the County based on the PSA. The PSA provides that "[a] person may bring a civil action in an appropriate district court of the United States for an injunction against another person . . . for a violation of this chapter." 49 U.S.C. § 60121(a)(1). Section 60123(b) states that "[a] person knowingly and willfully damaging or destroying an interstate gas pipeline facility . . . that is used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce, or attempting or conspiring to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both, and, if death results to any person, shall be imprisoned for any term of years or for life." 49 U.S.C. § 60123(b). However, a PSA action cannot be filed until 60 days after proper notice is given to the Secretary of Transportation, or to the appropriate state agency, and to the person alleged to have committed the violation. *See* 49 U.S.C. § 60121(a)(1)-(2); *see also Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 23 & n.1 (1989) (noting that the 60-day notice requirement of the PSA was patterned after § 304 of the Clean Air Amendments; holding that similar 60-day notice requirement was a mandatory condition precedent to commencing suit and failure to meet requirement required dismissal).

In a letter dated January 4, 2012, Laclede gave notice to the Missouri Public Service Commission ("MPSC")[4] that the County had threatened to tamper with Laclede's gas lines. The County was copied on the letter, which asked the MPSC to take enforcement action to prevent interference with Laclede's gas lines. The letter also notified the MPSC that Laclede intended to file a PSA claim if the MPSC failed to bring an enforcement action against the County. On January 30, 2012, the MPSC advised Laclede that it would not bring an action against the County and that it intended to step aside so that Laclede could pursue whatever action it felt appropriate

---

[4]The County does not dispute that the MPSC is the appropriate state authority certified under section 60105 of the PSA.

under state or federal law. On March 7, 2012, more than 60 days after the January 4, 2012, letter, Laclede filed its amended complaint seeking to enjoin the County from damaging or destroying its active gas lines pursuant to section 60123(b) of the PSA.

The County argues that Laclede's PSA claim is not properly before the court because Laclede did not comply with the PSA's notice requirements before filing suit. More specifically, the County argues that Laclede's amended complaint relates back to its original complaint under Federal Rule of Civil Procedure 15(c), and therefore, violates the 60-day notice requirement. This argument lacks merit.

Where, as here, a PSA claim appears for the first time in an amended complaint, courts should look to the date of the filing of the amended complaint rather than the original complaint to determine when the PSA claim was brought for purposes of determining whether notice was given as required by the statute. *See College Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1330 (N.D. Ga. 2002) (looking to amended complaint, rather than original complaint, to determine when Resource Conversation and Recovery Act claim was commenced for purposes of the 60-day notice requirement under 42 U.S.C. § 6972(b)(1)); *Williams Pipe Line Co. v. City of Mounds View*, 651 F. Supp. 551, 564 (D. Minn. 1987) (holding amended complaint under the Hazardous Liquid Pipeline Safety Act, 49 U.S.C.A. § 2014(b)(1), filed more than 60 days after detailed notice of alleged violations had been given to the Department of Transportation, cured any defects in initial compliance with the Act's notice requirements). *Cf. Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 C 7644, 2006 WL 2787520, at *10 (N.D. Ill. Sept. 22, 2006) (stating, in a case brought under the Public Securities Litigation Reform Act, 15 U.S.C. § 78u-4, that "defendants ask the Court to use the [relation back] doctrine to *defeat* plaintiff's claims. Defendants have not cited, and the Court has not found, any case in which the relation-back doctrine was used to bar claims") (emphasis in original).

-7-

In summary, there is nothing in the PSA, including the notice requirements, that bars amended complaints from stating a PSA claim.[5] And, more precisely, the "relation back" provisions of Rule 15(c) of the Federal Rules of Civil Procedure cannot properly be read to trump the substantive provisions of federal statutes such as the PSA.

The County also argues that the court lacks jurisdiction over Laclede's PSA claim because it is really just a "quintessential state law claim" under *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 554-55 (4th Cir. 1999). In *Drain*, the Fourth Circuit concluded that the PSA did not create jurisdiction over a claim that a private landowner's building encroached upon a gas company's easement. *Id*. Unlike *Drain,* which involved little more than determining the boundary of an easement, this matter involves an ongoing threat by the County to remove and relocate Laclede's gas lines, thereby threatening physical damage to the pipeline and as well as threatening the public safety. Such an ongoing and active threat is squarely within the wheelhouse of the PSA's injunctive relief provision—a provision that is obviously intended to enforce the federal prohibition against the knowing and willful infliction of damage to a regulated pipeline. In sum, an imminent threat of physical damage to a pipeline with the concomitant endangerment of the public, such as the one presented here, is sufficient to provide a federal district court with jurisdiction under PSA sections 60121(a)(1) and 60123(b) for the purposes of injunctive relief. The fact that the threat may find its genesis in a state law dispute does not defeat the federal question.

We next examine the County's argument that the district court should have abstained under the authority of *Aaron v. Target Corp.*, 357 F.3d 768, 779 (8th Cir.

---

[5]However, had the original complaint contained an imperfect PSA claim that failed to comply with the notice requirements, we doubt an amended complaint would cure the failure to give proper advance notice. *See Hallstrom*, 493 U.S. at 23. But that is not the situation we face in this case, as the amended complaint was filed more than 60 days following service of the required notice.

2004) (applying abstention principles from *Younger v. Harris*, 401 U.S. 37, 91 (1971), and stating that "[i]n the circumstances of this case it was an abuse of discretion for the district court not to abstain and permit a state eminent domain action to go forward"). We follow the counsel of *Aaron* and examine "what was actually taking place in both settings to decide whether" abstention was required. *Id.* at 775.

After the examination suggested by *Aaron*, we conclude that the district court did not abuse its discretion in proceeding despite the pending state ER Proceeding. Among other reasons, this is because (1) the state ER Proceeding, which is the predicate for the County's abstention argument, was brought two months *after* this federal suit was commenced and much had already occurred in the federal litigation by that time; (2) in the prior state PHR proceeding, the Missouri Supreme Court addressed a nearly identical issue and had ruled in favor of Laclede, but the County was unwilling to follow the Missouri Supreme Court's decision and instead commenced the state ER Proceeding (which it has now lost); (3) the injunctive relief sought by Laclede in federal court maintained the status quo and did not threaten to interfere with the state ER Proceeding; and (4) Laclede's federal PSA claim, involving serious public safety issues, was not at issue in the state ER Proceeding. To sum up, the equitable relief sought by Laclede in this federal suit was not likely to interfere with the pending state ER Proceeding in a way that offends principles of comity and federalism.

Overall, because Laclede provided notice and more than 60 days passed before the amended complaint was filed, the PSA claim was properly before the district court and the district court had subject matter jurisdiction to issue a preliminary injunction.

## B. Preliminary Injunction

In addition to its jurisdiction argument, the County argues, on the merits, that the district court erred in issuing the preliminary injunction order. We review the

issuance of a preliminary injunction for an abuse of discretion, "which occurs when the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 School Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (internal quotation omitted)). "We review the district court's legal conclusions de novo." *Id.* (quoting *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000 (8th Cir. 2012)). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase,* 640 F.2d at 113.

We have reviewed the record and the parties' arguments on the merits of the preliminary injunction order. We conclude that the district court did not abuse its discretion in issuing the preliminary injunction and, in particular, we conclude that the judge properly balanced the four relevant factors. In short, we do not find any of the County's arguments persuasive. The County's "probability of success on the merits" and "public interest" arguments are the only ones that warrant slightly more discussion.

1. Probability of Success on the Merits

"In deciding whether to grant a preliminary injunction, 'likelihood of success on the merits is most significant.'" *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) (quoting *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992)). In addressing this factor, the district court relied on *St. Charles County v. Laclede Gas Co.*, where the parties previously raised arguments similar to those in this case. In that case, the Missouri Supreme Court relied upon United States Supreme Court precedent to conclude that "when a utility's right to

construct and maintain its utility equipment is premised upon an easement, the utility is not responsible for the costs of relocating its equipment." 356 S.W.3d at 140 (citing *Panhandle E. Pipe Line Co. v. State Highway Comm'n*, 294 U.S. 613, 617-18 (1935)). With this principle in mind, and in light of the Missouri Supreme Court's ruling, the district court determined the probability-of-success factor convincingly weighed in favor of Laclede. In doing so, the district court noted that the Missouri Supreme Court opinion only addressed PHR, and not ER. However, because the operative language in the PHR and ER easements was remarkably similar, the district court decided to use the Missouri Supreme Court's rationale as guidance.

The County asserts that the district court failed to recognize the proper scope of the public's rights in its own roads, and therefore, its analysis under *Dataphase* was tainted. In making this assertion, the County rehashes several of the arguments previously rejected by the Missouri Supreme Court's opinion. The County persists in making these arguments even though it acknowledges that this court is bound by the Missouri Supreme Court's interpretation of Missouri law. *See Missouri v. City of Glasgow*, 152 F.3d 802, 805-06 (8th Cir. 1998). Plainly put, the County's odd argument—essentially, that the Missouri Supreme Court's opinion was either wrong or need not be followed—has no legal support. This is especially true given the County's concession, at oral argument, that Laclede has prevailed in the state ER Proceeding brought by the County.

2. Public Interest

The district court also determined that the "public interest" factor weighed in favor of Laclede. In making this determination, the district court found that Laclede's PHR and ER gas lines served numerous customers in the St. Charles area, a 200-foot retaining wall and six to eight feet of fill were directly over Laclede's Pitman Hill easement, the County had proposed to construct two more retaining walls on the Pitman Hill easement, and the County was planning to remove gas lines along PHR

-11-

and ER without Laclede's assistance. Moreover, and very importantly, we agree that the removal of gas lines along PHR and ER without the assistance of Laclede, as proposed by the County, enhances the risk of a potential explosion or leak and endangers the public safety. Indeed, at oral argument, the County conceded that neither the County nor its contractor had any experience removing pipelines. In sum, these factual findings are not clearly erroneous.

## III. CONCLUSION

To protect the public safety, and for other reasons, the district court stepped in when the County refused to adhere to the opinion of the Missouri Supreme Court in litigation it brought against Laclede. The district court had jurisdiction under the PSA, a federal statute that specifically authorized the district court to enjoin threats to damage pipelines. The issuance of a preliminary injunction in those circumstances was not error. Accordingly, the decision below is affirmed.

BYE, Circuit Judge, concurring.

Because I believe the district court could properly have exercised jurisdiction under the Pipeline Safety Act ("PSA"), I concur in affirming its issuance of a preliminary injunction. I write separately, however, to underscore the procedural infirmity of the district court's proceedings. Presented with several potential bases for subject matter jurisdiction and equally weighty arguments for a lack thereof, the district court circumvented the issue of jurisdiction entirely and proceeded directly to a consideration of the merits for injunctive relief. While I agree with the majority's rejection of a categorical rule requiring district courts to rule on jurisdictional issues prior to considering motions for injunctive relief, I find the district court's shortcut in this case problematic.

Presumably, the district court expected that amongst the many proffered grounds for jurisdiction, one would likely prevail. As the majority concludes, this proved true; Laclede's PSA claim would appear to provide a valid basis for subject matter jurisdiction. However, upon examining the district court's order granting Laclede's request for injunctive relief, I find no evidence to suggest the district court premised its injunction on that claim or, for that matter, even considered the PSA in weighing the Dataphase factors. Not only is there no mention of the PSA in the district court's order, but the court's discussion regarding Laclede's probability of success on the merits revolves solely around Laclede's takings claim—a claim which, by my estimation, is unripe. See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").

As a general matter, the exercise of supplemental jurisdiction over an unripe claim is troublesome. A party should not be permitted to bypass mandatory procedural hurdles merely by offering a separate jurisdictional anchor whose requirements are more easily met. In this case, Laclede filed a complaint on October 11, 2011, setting forth various takings claims against the County. On October 18, 2011, the County filed a motion to dismiss for lack of jurisdiction, arguing Laclede's takings claims were unripe as Laclede had not yet sought and been denied just compensation for the relocation of its gas lines. Nearly four months later—in the absence of any jurisdictional ruling by the district court—Laclede sought leave to file an amended complaint, adding a claim under the PSA. At this point, the district court acknowledged the still pending jurisdictional challenge but moved forward with Laclede's request for injunctive relief.

Two problems arise from the district court's decision to bypass the County's jurisdictional challenge and to nevertheless address Laclede's takings claims: (1) the

district court implicitly endorsed Laclede's failure to exhaust available state remedies for that claim, and (2) by focusing its analysis on the unripe takings claim, the district court failed to analyze the claim over which it could legitimately exercise jurisdiction, the PSA claim. Accordingly, the district court issued an injunction devoid of meaningful analysis of the claim we ought to review.

Despite significant concerns with respect to these errors, I believe remanding the case to the district court for reconsideration of Laclede's request for injunctive relief based on the PSA claim rather than the takings claim would prove inefficient and, ultimately, redundant. The harms the PSA is aimed to remedy (i.e., danger to life and property), see 49 U.S.C. § 60102(a)(1), are generally encompassed by the "public interest" factor a district court is obligated to weigh when ruling on a motion for preliminary injunction. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Here, though focused on Laclede's constitutional rights and ability to maintain its easements, the district court did consider the public's access to utility service and safety under the final prong of the Dataphase analysis. There is, thus, no reason to conclude that a narrower analysis on remand, dedicated solely to the PSA claim, would yield different results.

For the foregoing reasons, I concur in the majority's ultimate judgment but caution against continued tolerance of similar jurisdictional sidestepping by lower courts. The modest overlap in subject matter between Laclede's takings claim and its PSA claim provided an avenue for affirmance on these facts, but it is the rare case in which an injunction inappropriately addressing one claim can be upheld on the basis of another.

_____